UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Scott Wade Ramey, | File No. 11-cv-1585 (JRT/TNL) |
| Petitioner, | |
| v. | **REPORT & RECOMMENDATION** |
| State of Minnesota, and | |
| Patricia Rainy, | |
| Respondents. | |

Scott Wade Ramey, 613 Southwest Second Street, Rochester, MN 55902 (pro se Petitioner);

Craig S. Nelson, Freeborn County Attorney, 411 South Broadway Avenue, Albert Lea, MN 56007 (for Respondent State of Minnesota); and

Patricia Rainy.

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Petitioner Scott Wade Ramey's Petition Under 28 USC § 2254 for Writ of Habeas Corpus by a Person in State Custody. (Docket No. 1.) This action has been referred to the undersigned magistrate judge for report and recommendation to the district court under 28 U.S.C. § 636 and D. Minn. LR 72.2(b).

For the reasons stated below, **IT IS HEREBY RECOMMENDED** that the Petition Under 28 USC § 2254 for Writ of Habeas Corpus by a Person in State Custody (Docket No. 1) be **DENIED**; this action be **DISMISSED WITH PREJUDICE**; and the certificate of appealability be **DENIED**.

1

I.

**A. Factual Background**[1]

In 2008, Respondent Rainy Patricca[2] obtained a harassment restraining order (HRO) against Petitioner. *State v. Ramey*, No. A10-647, 2011 WL 891047, at *1-2 (Minn. App. Mar. 15, 2011). The HRO prohibited any contact between Petitioner and Patricca until July 7, 2010. *Id.* at *1. Respondent State of Minnesota charged Petitioner with one count of felony violation of an HRO in violation of Minn. Stat. § 609.748, subd. 6(a), (d), "based on four allegations of impermissible contact: visits between [Petitioner] and [Patricca] at the Freeborn County Adult Detention Center, where [Petitioner] was incarcerated, on March 10, April 16, and April 30, 2009, and a letter sent from [Petitioner] to [Patricca] on or about May 26, 2009." *Id.*

Prior to trial, Petitioner moved the state district court "to limit the [S]tate's evidence of the alleged HRO violations to the four contacts described in the complaint," stating that "he would ask for a mistrial if [Patricca] testified about any allegations of

---

[1] The relevant background facts have been taken from (1) portions of an appellate brief filed in connection with Petitioner's appeal of his conviction, which was attached to the instant petition; (2) the resulting opinion issued by the Minnesota Court of Appeals from that appeal; and (3) Respondent's cursory answer. While Respondent's answer indicates that a partial jury transcript and copies of the appellate briefs and appellate court decisions were filed with this Court along with Respondent's answer, these materials were not included. (*See* Docket No. 7.)

[2] In its answer, Respondent State of Minnesota states that "[t]he second Respondent named in the heading of this case is the victim in Petitioner's criminal case whose correct name is Rainy Patricca." (Docket No. 7 at 1.) The Court therefore uses the correct spelling of Respondent Patricca's name. Further, as this Court previously stated in an Order dated August 22, 2011:

> It is not clear to this Court why Patricia Rainy has been named as a Respondent in this case. *See* 28 U.S.C. § 2242 (stating an application for writ of habeas corpus "shall allege the facts concerning the applicant's commitment or detention, the name of the person who has custody over him and by virtue of what claim or authority, if known"); Rule 2(a) of the Rules Governing Section 2254 Petitions, 28 U.S.C. foll. § 2254 ("If the petitioner is currently in custody under a state-court judgment, the petition must name as respondent the state officer who has custody.").

(Docket No. 6 at 1 n.1.)

contact other than those described in the complaint." *Id.* Petitioner's motion was granted and the prosecutor was instructed "to inform [Patricca] not to testify about any alleged contacts with [Petitioner] other than the four contacts described in the complaint." *Id.* In the proceedings that followed, Petitioner made three requests for a mistrial: once in response to offensive racist and sexist comments made by a venire member; once in response to Patricca's testimony that she had received "letters" from Petitioner, rather than the single letter referred to in the complaint; and once in response to a letter in an envelope presented by Patricca's daughter to the prosecutor which was subsequently determined not to be a copy of the referenced letter in the complaint, but another letter sent to Patricca by Petitioner. *Id.*

It is this third incident that gives rise to the instant petition. Once it was discovered that the letter in the envelope was not the same as the letter in the complaint, the prosecutor moved to amend the complaint to add an additional count of violating the HRO based on the letter in the envelope. *Id.* The state district court granted the motion. *Id.* at *2. Accepting defense counsel's representation that it could not proceed with trial that day having just learned of the letter in the envelope, the state district court considered continuing the trial but "ultimately decided against it because some of the jurors were not available for service beyond that day. Instead, the district court suggested a mistrial. After providing [Petitioner] with an opportunity to make a record, which he declined, the district court granted a mistrial." *Id.*

Following the mistrial, the State filed an amended complaint, again alleging a single count of felony violation of an HRO, but this time, in addition to the prior four

3

allegations of impermissible conduct, the State included the letter in the envelope as well as three or four additional letters sent by Petitioner to Patricca. *Id.* Petitioner

> moved to dismiss the amended complaint on double-jeopardy grounds. The district court determined that the prohibition against double jeopardy did not prohibit [Petitioner's] retrial because he had repeatedly requested a mistrial during the first trial and the state had not provoked the mistrial. The district court also determined, in the alternative, that even if the mistrial had been declared without [Petitioner's] consent, retrial was permitted because there was a "'manifest necessity' for the mistrial."

*Id.*

Ultimately, Petitioner was convicted of felony violation of an HRO and received an executed prison term of 27 months. *Id.* Petitioner appealed his conviction to the Minnesota Court of Appeals, asserting, among other things, that "his retrial violated the double-jeopardy provisions of the federal and state constitutions." *Id.* The Minnesota Court of Appeals held that Petitioner's retrial was not barred on double-jeopardy grounds and affirmed Petitioner's conviction, concluding that the totality of the circumstances showed that Petitioner consented to the mistrial and the mistrial was not provoked by the State:

> [Petitioner] requested a mistrial three times during the first trial. Two of the requests were based on the state's introduction of evidence regarding contacts other than those described in the complaint, which was one of the reasons for the ultimate mistrial. Moreover, [Petitioner] had informed the district court that he would request a mistrial if [Patricca] testified regarding any contacts other than those described in the complaint. Even though [Petitioner] did not renew his request for a mistrial after the district court granted the state's motion to amend the complaint to include the newly disclosed letter, [Petitioner] was invited to make a record of his position

4

> regarding a mistrial, and he did not object. The only reasonable conclusion to be drawn from these circumstances is that [Petitioner] implicitly consented to the mistrial.
>
> . . . .
>
> [Petitioner] does not argue that the state provoked the mistrial. In fact, [Petitioner] concedes that the state "was surprised when [Patricca's daughter] provided a letter during direct examination" and asserts that the mistrial was caused by the "inaction" of the state, noting that "[i]f the state had prepared its witness better for trial, the witness would not have taken the stand with a new piece of evidence in her hand." On this record, there is no basis to conclude that the state's request to amend the complaint to include the newly discovered letter was an effort to provoke a mistrial.

*Id.* at *3-4. The Minnesota Supreme Court denied review on May 25, 2011.

Petitioner was previously confined at the Freeborn County jail and, most recently, the prison located in Faribault, Minnesota. (Docket No. 1 at 1.) Petitioner was released on May 23, 2011, and his period of supervised release was to end on September 21, 2011.[3] (Docket No. 7 at 2.)

**B. Procedural History**

On June 16, 2011, Petitioner filed his Petition Under 28 USC § 2254 for Writ of Habeas Corpus by a Person in State Custody on the basis that his retrial violated the

---

[3] The fact that Petitioner was no longer "in custody" at the prison at the time that he filed his petition does not deprive this Court of jurisdiction over Petitioner's petition. Petitioner was released in May 2011 and was on supervised release, i.e., probation, until September. Probation is sufficient to satisfy the in-custody requirement. *See, e.g.*, *Lee v. Stickman*, 357 F.3d 338, 342 (3rd Cir. 2004) ("It is equally clear that being on probation meets the 'in custody' requirement for purposes of the habeas statute."); *Jackson v. Coalter*, 337 F.3d 74, 79 (1st Cir. 2003) (where habeas petitioner's incarceration had ended but he remained under supervised probation, petitioner "is still sufficiently 'in custody' to pursue federal habeas relief."); *see also Jones v. Jerrison*, 20 F.3d 849, 852 n.2 (8th Cir. 1994) ("Parole status does not deprive a federal court of jurisdiction over a habeas petition, however, because a parolee is still 'in custody.'"). Petitioner filed his petition in June, while he was still on probation, and therefore this Court has jurisdiction over the petition. Likewise, the fact that Petitioner may have already completed his sentence does not deprive this Court of jurisdiction. "A federal court retains jurisdiction over a habeas petition . . . so long as jurisdiction existed at the time the petition was filed." *Jones*, 20 F.3d at 852 n.2.

double-jeopardy provisions of the United States Constitution. (Docket No. 1.) The State filed an Answer to Petitioner's petition. (Docket No. 7.) The State does not dispute that Petitioner has exhausted state court remedies. *See Garrison v. Burt*, 637 F.3d 849, 853 (8th Cir. 2011) (habeas petitioner met exhaustion requirement by presenting all constitutional claims to the state court of appeals and then applying for further review to the state supreme court, which denied further review) . The State argues that Petitioner's petition should be denied on the merits: "The Double Jeopardy Clause did not bar the Petitioner's retrial because he repeatedly requested a mistrial at his first trial, the prosecutor did not engage in any intentional misconduct to provoke the mistrial, and there was, in any event, a manifest necessity for the mistrial." (Docket No. 7 at 1-2.) Petitioner did not file a reply.

## II.

The "district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). However, the

> application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d).  "A state court's findings are entitled to a presumption of correctness, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence."  *Hanegan v. Miller*, 663 F.3d 349, 354 (8th Cir. 2011) (citing 28 U.S.C. § 2254(e)(1)).

**A. Proper Respondent**

As an initial matter, the Court notes that Petitioner has named both the State and Patricca as respondents.  Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts requires the petitioner to "name as respondent the state officer who has custody" of the petitioner.  28 U.S.C. foll. § 2254; *see also* 28 U.S.C. § 2242 (stating an application for writ of habeas corpus "shall allege the facts concerning the applicant's commitment or detention, *the name of the person who has custody over him* and by virtue of what claim or authority, if known" (emphasis added)).

"Where the petitioner is on probation or parole, the proper respondent for a habeas corpus petition is the petitioner's probation or parole officer and the official in charge of the parole or probation agency or the state correctional agency."  *Thomas v. Cate*, No. 1:05-cv-01198-LJO-JMD-HC, 715 F. Supp.2d 1012, 1017 n.2 (E.D. Cal. 2010).  Petitioner has only named as respondents the prosecuting body and the victim of his crime, not the state officer charged with supervising his probation.  Where a petitioner has not named the proper respondent, this Court "would typically grant [the p]etitioner leave to file an amended petition naming the appropriate respondent."  *Thornblad v.*

7

*Windels*, No. 07-1857 (RHK/SRN), 2008 WL 1776575, at *3 (D. Minn. Apr. 16, 2008). However, because this Court concludes that Petitioner is not entitled to a writ of habeas corpus regardless of who has "custody" of Petitioner for the reasons set forth below, granting leave to Petitioner to amend his petition would be futile. Therefore, the Court proceeds directly to the merits of Petitioner's petition.

### B. Double Jeopardy

The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This Double Jeopardy Clause "stand[s] for the deeply ingrained principle that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense." *United States v. Howe*, 590 F.3d 552, 555 (8th Cir. 2009) (quotation omitted). Accordingly, this clause "protects a criminal defendant from repeated prosecutions for the same offense." *Garrison*, 637 F.3d at 853 (quotation omitted). Nonetheless, when a defendant requests and consents to a mistrial in his first trial, a subsequent retrial will not violate the principles of double jeopardy. *United States v. Keeper*, 977 F.2d 1238, 1242 (8th Cir. 1992); *see also Garrison*, 637 F.3d at 853 ("With limited exceptions, double jeopardy does not bar retrial after a defendant successfully moves for mistrial.").

In his direct appeal to the Minnesota Court of Appeals, Petitioner argued that his second trial violated the principles of double jeopardy. *Ramey*, No. 2011 WL 891047, at *2. The appellate court stated that, when a defendant consents to a mistrial, "he is deemed to have waived any double jeopardy claim he might otherwise have" and "[t]he

8

*only* circumstance in which the defendant's consent to a mistrial does not operate as a waiver of the right to claim double jeopardy is where the prosecutor or judge intentionally provokes the defendant to request a mistrial." *Id.* at *3 (emphasis added) (quotations omitted). The appellate court went on to state that, although failure to object to a mistrial alone does not signify consent, "[a] defendant's consent to a mistrial need not be express but may be implied from the totality of the circumstances." *Id.*

Noting that Petitioner "clearly did not object to the mistrial," the state appellate court turned to whether Petitioner's consent could be implied from the totality of the circumstances. The circumstances considered by the court were (1) Petitioner's two requests for a mistrial based on the State's introduction of evidence regarding non-complaint contacts; (2) Petitioner's statement to "the [state] district court that he would request a mistrial if [Patricca] testified regarding any contacts other than those described in the complaint"; and (3) the absence of an objection from Petitioner when "invited to make a record of his position regarding a mistrial" by the state district court. *Id.* In light of the foregoing, the Minnesota Court of Appeals concluded that "[t]he only reasonable conclusion to be drawn from these circumstances is that [Petitioner] implicitly consented to the mistrial." *Id.*

Having concluded that Petitioner's implicit consent had otherwise waived any double jeopardy claim, the appellate court turned to whether the State or the state district court judge had intentionally provoked the mistrial. *Id.* at *4. On this issue, the appellate court affirmed the state district court's finding that neither the State nor the state district court intentionally provoked the mistrial. *Id.* The court also highlighted the fact

9

Petitioner himself "d[id] not argue that the [S]tate provoked the mistrial," but, rather, "concede[d] that the [S]tate 'was surprised when [Patricca's daughter] provided a letter during direct examination' and assert[ed] that the mistrial was caused by the 'inaction' of the [S]tate.'" *Id.*

In the present petition, Petitioner asserts only that his conviction resulted from a violation of the principles of double jeopardy. (Docket No. 1 at 4.) Petitioner does not take any issue with the factual determinations of the appellate court or state district court. This Court presumes the accuracy of those determinations and Petitioner has not has not offered any evidence, let alone clear and convincing evidence, to rebut that presumption. *See de la Garza v. Fabian*, 574 F.3d 998, 1002 (8th Cir. 2009) ("[I]t is well established that the factual determinations of the state court, including those by the state appellate court, are presumed to be correct.").

Further, "a federal court may grant a writ of habeas corpus on a claim decided by a state court only when the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court." *Id.* at 1001. "A state court decision is contrary to clearly established federal law if it reaches a conclusion opposite to one reached by the Supreme Court on a question of law or decides the case differently than the Supreme Court has decided a case with a materially indistinguishable set of facts." *Id.*

In *Oregon v. Kennedy*, the Supreme Court held

> that the circumstances under which . . . a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving

> rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.

456 U.S. 667, 679, 102 S. Ct. 2083, 2091 (1982).  The Supreme Court explained that

> [a] defendant's motion for a mistrial constitutes a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact.  Where prosecutorial error even of a degree sufficient to warrant a mistrial has occurred, the important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error.  Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.

*Id.* at 676, 102 S. Ct. 2083, 2089 (quotations and citations omitted).

The state courts' rulings on Petitioner's double jeopardy claims are entirely consistent with the Supreme Court's ruling in *Kennedy* and Petitioner has not claimed or shown otherwise.  Therefore, because Petitioner does not take any issue with the factual findings of the state courts that he was not goaded into a mistrial, Petitioner's retrial was not barred by the Double Jeopardy Clause of the Fifth Amendment.  *See, e.g.*, *Garrison*, 637 F.3d at 854; *Kosher v. Roehrich*, No. 05-cv-3018 (JMR/SRN), 2008 WL 2705081, at *18 (D. Minn. July 7, 2008).

**III.**

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  28 U.S.C. foll. § 2254.  A certificate of appealability cannot be granted, unless the petitioner "has made a substantial showing of

11

the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); s*ee also Hardy v. United States*, Nos. CIV. 01-634 (JRT), CR 98-2751 (JRT/JGL), 2002 WL 1752215, at *5 (D. Minn. July 29, 2002). "To make such a showing, the issues must be debatable among reasonable jurists, a court must be able to resolve the issues differently, or the case must deserve further proceedings." *Hardy*, 2002 WL 1752215, at *5. Here, Petitioner has made no such showing. Therefore, this Court recommends that the certificate of appealability be denied.

[Continued on next page.]

## IV.

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Petition Under 28 USC § 2254 for Writ of Habeas Corpus by a Person in State Custody (Docket No. 1.) be **DENIED**;

2. This action be **DISMISSED WITH PREJUDICE**; and

3. The certificate of appealability be **DENIED**.


Date: June   20   , 2012                              *s/ Tony N. Leung*
                                                      Tony N. Leung
                                                      United States Magistrate Judge
                                                      for the District of Minnesota


                                                      *Ramey v. State Court*
                                                      File No. 11-cv-1585 (JRT/TNL)


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **July 5, 2012**.